IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

**CHRISTOPHER CLARK** and
**LAURA CLARK,**

    Plaintiffs,

v.

**CIVIL ACTION NO. 5:16-CV-137
(BAILEY)**

**MCELROY COAL COMPANY,
THE MARSHALL COUNTY COAL CO.,** and
**MURRAY ENERGY CORPORATION,**

    Defendants.

## MEMORANDUM ORDER AND OPINION
## DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY
## AND MOTION FOR SUMMARY JUDGMENT

Currently pending before this Court is defendants' Motion to Exclude Expert Testimony and Motion for Summary Judgment [Doc. 24], filed July 26, 2017. Plaintiffs filed a response to the Motion on August 9, 2017 [Doc. 27]. Defendants filed a reply on August 22, 2017 [Doc. 28]. Having been fully briefed, this matter is now ripe for decision. For the reasons set forth below, this Court denies defendants' Motion to Exclude Expert Testimony and Motion for Summary Judgment.

### I. MOTION TO EXCLUDE EXPERT TESTIMONY

### A. BACKGROUND

This case arises from an action originally filed in the Circuit Court of Marshall County, West Virginia, on July 20, 2016 [Doc. 1-1]. Defendants timely removed the case to this Court under federal diversity jurisdiction, 28 U.S.C. § 1332, on August 22, 2016 [Doc. 1].

Plaintiffs subsequently filed an Amended Complaint [Doc. 6] on September 6, 2016. In the Amended Complaint, plaintiffs note that they own a home and approximately 65 acres of property situated in the Cameron area of Marshall County, West Virginia, while defendants own and/or lease certain coal interests on the same [Id. at ¶¶ 9-12]. Defendants' mining operations under plaintiffs' property has allegedly caused and are continuing to cause subsidence damage to plaintiffs' real and personal property [Id. at ¶ 14]. Plaintiffs now seek recourse under four theories of liability: (1) a common law claim for "Support of the Surface Estate"; (2) a statutory action brought pursuant to the West Virginia Surface Coal Mining and Reclamation Act, W.Va. Code §§ 22-3-25(f) and 22-3-25(c), and W.Va. C.S.R. §§ 38-2-16.1.a and 28-2-16.2.c.1-3; (3) an additional statutory action brought pursuant to the Federal Surface Mining Control and Reclamation Act,[1] 30 U.S.C. §§ 1270(f), 1270(a), and 1309(a)(1), and provisions of 30 C.F.R. § 817.121 [Id. at ¶¶ 20-60]; and (4) an additional common law claim for "Promissory Estoppel, Agency and Respondent Superior." Plaintiffs claim a number of property-based damages resulting from the subsidence, including damage to the surface, damage to the physical structures located on the property, loss of use, and loss of property value [Id. at ¶¶ 25-28]. Plaintiffs also allege damages related to their private use and enjoyment of the property, including annoyance and inconvenience [Id. at ¶¶ 28-29].

With regards to defendants' Motion to Exclude Expert Testimony [Doc. 24], defendants seek a ruling excluding any testimony from plaintiffs' liability expert, George Carter, Jr., P.E. Defendants' basis for this Motion is plaintiffs' failure to provide an expert

---

[1] The First Amended Complaint incorrectly designates Count III as "Federal Surface Coal Mining Reclamation Act."

2

report from Mr. Carter until after the period allowed for discovery had elapsed [Doc. 28 at 1].

On October 5, 2016, this Court ordered plaintiffs to make their Rule 26(a)(2) disclosures of expert witnesses no later than February 21, 2017, and for defendants to make such expert disclosures by April 4, 2017 [Doc. 11]. By stipulation, the parties agreed to extend the deadlines for the disclosure of expert witnesses to March 20, 2017, for the plaintiffs and April 24, 2017, for the defendants [Docs. 16, 24-4].

On March 20, 2017, plaintiffs disclosed their expert witness as to liability, George Carter, Jr., P.E., however they did not produce an expert report [Docs. 23 at 3, 27 at 3]. Plaintiffs' initial disclosure of Mr. Carter outlined Mr. Carter's background and experience, his opinion that "to a reasonable degree of engineering certainty . . . damages to the Plaintiffs' surface lands, residence and related structures were caused by underground coal mining and the effects of subsidence related to those underground mining operations," and the materials Mr. Carter analyzed in forming that opinion [Doc. 21 at 2]. The initial disclosure also indicated that Mr. Carter was "in the process of preparing a report that will be submitted as soon as it is completed." Id.

Mr. Carter's expert report was not produced until July 26, 2017, [Docs. 27-8, 28 at 1], after several emails, letters, and in person interactions from defense counsel allegedly went ignored [Docs. 24-5, 24-6, 24-7, 24-8, 24-9]. By the time Mr. Carter's report was produced, the discovery deadline had passed and the defendants had filed the Motion before this Court. Despite the report being four months late, plaintiffs never sought a continuance or an extension of any deadlines with this Court.

Plaintiffs contend that after the initial disclosure of Mr. Carter, the defendants

3

produced additional documents as discovery continued, and that Mr. Carter needed to review those documents before he could issue his report [Doc. 27 at 3-4]. However, Mr. Carter was unable to complete his review of the file and unable to visit the plaintiffs' property until July 14, 2017, as he underwent eye surgery related to cataracts. Id. at 4. Mr. Carter's affidavit states that he was evaluated on April 28, 2017, for cataract eye surgery due to continued headaches and vision problems [Doc. 27-9 at 1]. He had two cataract surgeries on May 20 and June 13, 2017. Id. Mr. Carter "experienced vision problems and headaches that prohibited [him] from doing any extensive, long-term reading," both prior to and after completion of his surgeries. Id. Thus, Mr. Carter was unable to review the additional documentation that was provided to him after his initial opinion, which was necessary for completion of his final opinion and report. Id. Mr. Carter was able to visit the plaintiffs' property on July 17, 2014, after which he "prepared and finalized [his] report as soon as reasonably possible given the . . . circumstances." Id.

## B. DISCUSSION

"[A] party must disclose to the other parties the identity of any witness it may use at trial." Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report–prepared and signed by the witness–if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). This report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study

and testimony in the case.

Id.

"If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless* the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). In determining whether a nondisclosure of evidence is substantially justified or harmless for the purposes of this exclusion analysis, district courts have "broad discretion" and should consider the following factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Here, there is no question that an extension of the discovery deadlines should have been requested. Despite the filing of expert reports from defendants, and multiple reminders and inquiries from defense counsel, plaintiffs' counsel did not even attempt to seek an extension from this Court. However, while this Court does not condone plaintiffs' counsel's actions, it does find the delay in the release of Mr. Carter's expert report to be harmless.

With regard to the first two factors from *Southern States Rack & Fixture*, Mr. Carter's opinion could not have come as a surprise to the defendants. Subsidence damage is the basis for this case, thus defendants had to expect plaintiffs' expert as to

5

liability to have the opinion that damages to plaintiffs' structures were subsidence related. Mr. Carter did not present an unpredictable position. Further, any alleged surprise to defendants can be cured by deposing Mr. Carter regarding the nature and scope of the opinions outlined in his report.

Turning to the third factor, allowing Mr. Carter's report and testimony will not disrupt the trial. Trial will not begin until November 28, 2017. This should be plenty of time to depose Mr. Carter, if such has not occurred already, and to prepare for cross-examination. Defendants have their own experts who have already formed their opinions that rebut Mr. Carter's opinion. Defendants can also raise Mr. Carter's testimony as the subject of a motion in limine if their concerns continue. Plainly, the trial is far enough away that it will not be affected.

As to the fourth factor, Mr. Carter's testimony is very important, as it goes to the main issue in this case of whether the plaintiffs have experienced mine subsidence damage. The issues related to causation in this matter are likely beyond the ken of the ordinary layperson, thus Mr. Carter's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Finally, plaintiffs' explanation for their failure to timely disclose Mr. Carter's report is acceptable. This Court agrees with the defendants that Mr. Carter's medical condition "does not excuse Plaintiffs' failure to bring such facts to the Court's attention and request an extension *before* the close of discovery" [Doc. 28 at 5]. However, while plaintiffs have not presented justification for failing to seek an extension with this Court, the Court finds Mr. Carter's explanation for why it took him so long to complete his report is justified. Mr. Carter underwent two eye surgeries for cataracts, which caused problems with his vision

and headaches that affected his ability to read and analyze the documents provided to him in order to form the basis of his opinion. Mr. Carter submitted a sworn affidavit stating that he produced his report as soon as he reasonably could do so in light of the circumstances.

Therefore, for the reasons stated above, this Court finds plaintiffs' failure to timely disclose Mr. Carter's expert report was harmless. Accordingly, this Court denies defendants' Motion to Exclude Expert Testimony. However, this Court would admonish plaintiffs' counsel to keep the Court advised of such situations in the future and seek the appropriate remedies.

Additionally, after finally receiving Mr. Carter's report, defendants argue in their Reply [Doc. 28] that Mr. Carter's report and testimony is inadmissible under Federal Rule of Evidence 702. Defendants believe "even if this Court accepts Plaintiffs' untimely disclosure, Mr. Carter's testimony should be excluded on a substantive basis–the report does not meet the criteria for expert testimony because it does not assist the trier of fact." Id. at 2. This Court disagrees.

Once qualified, an expert's testimony is admissible if it: (1) will assist the trier of fact, (2) "is based on sufficient facts or data," (3) is the product of reliable principles and methods," and (4) "the principles and methods [have been applied] reliably to the facts of the case." Fed. R. Evid. 702; see *United States v. McLean*, 715 F.3d 129, 144 (4th Cir. 2013). The evidence should be admitted if "it rests on a reliable foundation and is relevant." ***Daubert v. Merrell Dow Pharm.***, 509 U.S. 579, 597 (1993). Among other things, relevance and reliability is guided by:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of

7

standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

*United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003) (quoting *Daubert*, 509 U.S. at 593-94).

A court need not, however, consider all of the factors in lockstep fashion. *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 282-83 (S.D. W.Va. 2015). Neither Rule 702 nor case law establishes a mechanistic test for determining the reliability of an expert's proffered testimony. *Id.* In *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378 (4th Cir. 1995), the Fourth Circuit stressed:

> In offering these guidelines, the court emphasized that it was not formulating a rigid test or checklist, relying instead on the ability of federal judges to properly determine admissibility. In conclusion, the Court held that the Federal Rules of Evidence, especially Rule 702, assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.

66 F.3d at 1384 (internal citation and quotation omitted).

"All *Daubert* demands is that the trial judge make a 'preliminary assessment' of whether the proffered testimony is both reliable . . . and helpful." *Maryland Cas. Co. v. Term-O-Disc., Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). "'The test of reliability is flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.'" *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999)). To be relevant, the evidence must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Another aspect of relevancy is whether there is a sufficient "fit," or in other words

8

"whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citing *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). A court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citing *Kumho Tire*, 526 U.S. at 149-153) (footnote omitted).

It is important to recognize that, notwithstanding a trial court's "gatekeeping" function regarding expert opinion, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595. This Court is also mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence. *See Cavallo v. Star Enter.*, 100 F.3d 1150, 1158-59 (4th Cir. 1996). Further, although the trial court is granted broad discretion, the rejection of proposed expert witness testimony is the exception rather than the rule. *See SMD Software, Inc. v. Emove, Inc.*, 945 F.Supp.2d 628, 634-35 (E.D. N.C. 2013) (Flanagan, J.) (citing Fed. R. Evid. 702 advisory committee's note (2000)); *see also United States v. Crisp*, 324 F.3d 261, 269-70 (4th Cir. 2003).

A witness qualified as an expert has wide latitude to testify on matters within the scope of his expertise. *See Daubert*, 509 U.S. at 579, 592. The primary limitation on the scope of an expert's testimony is helpfulness: testimony that is helpful to the jury may be admissible, while testimony that is not helpful can be excluded. *See Kopf v. Skyrm*, 993

9

F.2d 374, 377 (4th Cir. 1993) ("The boundary between [admissible and inadmissible expert testimony] is defined by helpfulness.").

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

This Court finds Mr. Carter's report and anticipated testimony to be both reliable and relevant. In developing his opinion, Mr. Carter reviewed pre- and post-mining photographs of the plaintiffs' property, the Plaintiffs' Responses to the Defendants' First Set of Interrogatories and Request for Production, aerial photographs of plaintiffs' property, an estimate from Panhandle Cleaning and Restoration, and the pre-mining inspection [Docs. 27-6 at 2, 27-8 at 1]. He also "visited the [plaintiffs'] property to confirm that the visible damages were consistent with what [he has] seen in cases of massive ground movement and that no alternative explanation for the damages, taken as a whole, was evident" [Doc. 27-8 at 1]. These are the types of facts and data that "experts in the particular field would reasonably rely on . . . in forming an opinion," and thus this Court finds that opinion to be reliable.

Further, this Court finds Mr. Carter's opinion to be relevant. The issues related to causation in this matter are likely beyond the ken of the ordinary layperson, thus Mr. Carter's testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Part of defendants' argument as to causation is that

10

"[t]he unchallenged record evidence shows that Plaintiffs' residence and structures were **not** undermined and were **not** within the statutory angle of draw of actual mining" [Doc. 28 at 11]. Mr. Carter's report states that he is "personally familiar with at least four cases in which damage occurred to a structure outside the presumptive angle of draw due to the extraction of coal by longwall" [Doc. 27-8 at 2]. Mr. Carter also references the Duke Lake Dam at Ryerson Station State Park, in which it was "concluded that the damage to the dam was attributable to longwall mining beyond the distance predicted by customary subsidence theory." Id. Thus, Mr. Carter's opinion is being offered to explain to the trier of fact that "[t]here is a substantial number of cases which suggest that longwall mining under ridge-and-valley surface topography can cause significant surface disturbance outside of the zone generally considered to be susceptible to mine subsidence" and that the plaintiffs' property "shares the common characteristics of these unusual cases" [Doc. 27-8 at 3]. This Court finds that this opinion will be helpful to assist the trier of fact in understanding how subsidence damage can occur outside of the typical zone of susceptibility. Defendants can attack Mr. Carter's opinion through deposition, cross-examination, and presentation of contrary evidence, but having found the opinion to be both reliable and helpful, it is admissible.

Therefore, for the reasons stated above, this Court makes the preliminary assessment that Mr. Carter's report and anticipated testimony is reliable and relevant. Accordingly, this Court denies defendants' Motion to Exclude Expert Testimony.

## II. MOTION FOR SUMMARY JUDGMENT

### A. BACKGROUND

With regard to defendants' Motion for Summary Judgment, defendants first argue that "[i]n the absence of expert testimony on behalf of the Plaintiffs relative to causation, summary judgment in favor of Defendant as to Count I (surface support) Count II (W.Va. SMCRA) and Count III (Federal SMCRA) is proper" [Doc. 23 at 8]. Next, defendants argue summary judgment is appropriate with regard to Count IV, plaintiffs' promissory estoppel claim, because "Plaintiffs have never identified or provided any evidence of any action or forbearance with regard to the alleged promise of 'repair of the damages to the Plaintiffs' home' or 'that the foundation of their home would be replaced' or any damages resulting from any such action or forbearance" [Doc. 24 at 4-5]. Finally, defendants argue that Count I (surface support) should be dismissed because plaintiffs' predecessors-in-interest allegedly waived the common law right to support and damages to the overlying strata resulting from mining.

### B. STANDARD OF REVIEW

Fed. R. Civ. P. 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact."

*Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991), *cert. denied*, 502 U.S. 1095 (1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in *Anderson*, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250; *see also Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950))).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248. "If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

## C. DISCUSSION

This Court will first address defendants' argument that summary judgment is appropriate for Counts I-III "[i]n the absence of expert testimony on behalf of the Plaintiffs relative to causation" [Doc. 23 at 8]. This argument was made prior to receiving Mr. Carter's report. However, defendants have now received Mr. Carter's report and this Court has just denied defendants' motion to exclude it. Thus, defendants' argument for summary judgment based on the complete absence of expert testimony is moot.

Further, plaintiffs have demonstrated there are genuine issues of material fact, such that summary judgment as to liability is inappropriate. Mr. Carter's expert report, coupled with plaintiffs' anticipated testimony, the fact that a pre-mining survey was done on plaintiffs' property [Doc. 27-1], the fact that plaintiffs' property was included in the mine subsidence control plan as one within the angle of draw [Doc. 27-2], and plaintiffs' deposition testimony that he was told by defendants' employee, Neil Fowkes, that they had subsidence damage, that defendants' would repair that damage, and tear down their outbuilding [Doc. 27-5], all show there are genuine issues of material fact regarding liability and causation. These issues can only be properly resolved by a finder of fact, and thus defendants' motion for summary judgment as to causation and liability is denied.

Regarding defendants' promissory estoppel argument, it is a question of fact, not law, whether plaintiffs, as they claim, delayed making repairs on their home because of the alleged promise by defendants' employee. Thus, it is for the finder of fact to decide whether such forbearance took place and what damages, if any, resulted from such

14

forbearance. Accordingly, summary judgment is improper and defendants' motion for summary judgment as to plaintiffs' promissory estoppel claim is denied.

Finally, defendants argue that Count I (surface support) should be dismissed because plaintiffs' predecessors-in-interest allegedly waived the common law right to support and damages to the overlying strata resulting from mining. Plaintiffs filed their own motion for partial summary judgment on this issue, seeking a ruling that this alleged broad form waiver of damages related to subsidence damage is not enforceable [Doc. 25]. This Court has already granted plaintiffs' motion for partial summary judgment on this issue, holding that the broad form waiver of subjacent support is not a valid waiver against the subsidence damage caused by longwall mining [Doc. 30]. For the reasons stated more fully therein, defendants' motion is denied.

## III. CONCLUSION

For the reasons stated above, this Court hereby **DENIES** defendants' Motion to Exclude Expert Testimony and Motion for Summary Judgment **[Doc. 24]**.

It is so **ORDERED**.

The Clerk of Court is directed to transmit copies of this Order to all counsel of record.

**DATED**: September 18, 2017.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

15